E. MARTIN ESTRADA
United States Attorney
MACK JENKINS
Assistant United States Attorney
Chief, Criminal Division
MATTHEW R. BELZ
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
     300 N. Los Angeles St., Suite 2001
     Los Angeles, California 90012
     Telephone: (202) 579-4526
     E-mail: matthew.belz@usdoj.gov

Attorney for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-00446-DSF |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | |
| JANE ALCAIN, | Hearing: June 10, 2024<br>Time: 8:30 a.m.<br>Courtroom: 7D |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel of record, the Fraud Section of the United States Department of Justice, hereby files its Sentencing Memorandum with respect to Defendant Jane Alcain.

//

//

1

1       This Sentencing Memorandum is based upon the attached memorandum of points

2   and authorities, the files and records in this case, the Presentence Report, and such

3   further evidence and argument as the Court may permit at the sentencing hearing.

4   Dated: May 28, 2024               Respectfully submitted,

5                                E. MARTIN ESTRADA
                             United States Attorney

6

7                                MACK JENKINS
                             Assistant United States Attorney
                             Chief, Criminal Division

8

9                                  /s/
                             MATTHEW R. BELZ
                             Trial Attorney, Fraud Section

10

11                               Attorney for Plaintiff
                             UNITED STATES OF AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................1

II.     PROCEDURAL BACKGROUND ......................................................................1

III.    OFFENSE CONDUCT ........................................................................................1

IV.     GUIDELINES CALCULATION .........................................................................4

        A.      Presentence Investigation Report .............................................................4

        B.      Plea Agreement.........................................................................................4

        C.      Applicable Guidelines Provisions ............................................................4

                1.      Loss Amount ...................................................................................4

                2.      Federal Health Care Offense ...........................................................5

                3.      Aggravating Role............................................................................5

                4.      Abuse of Position of Trust ...............................................................6

                5.      Total Offense Level .........................................................................7

V.      MOTION FOR DOWNWARD DEPARTURE UNDER SECTION 5K1.1 .........7

VI.     RESTITUTION ...................................................................................................9

VII.    ANALYSIS OF RELEVANT 18 U.S.C. § 3553(a) SENTENCING
        FACTORS ...........................................................................................................9

        A.      The Nature and Circumstances of Defendant's Offense and Her
                History and Characteristics Under 18 U.S.C. § 3553(a)(1).......................10

        B.      The 18 U.S.C. § 3553(a)(2) Factors Support a 21-Month Sentence...........11

VIII.   CONCLUSION ...................................................................................................12

**TABLE OF AUTHORITIES**

**CASES**

United States v. Adebimpe,

   819 F.3d 1212 (9th Cir. 2016) ...............................................................................7, 11

United States v. Adebimpe,

   649 F. App'x 449 (9th Cir. 2016) ...............................................................................11

United States v. Booker,

   543 U.S. 220 (2005) ...............................................................................10

United States v. Carty,

   520 F.3d 984 (9th Cir. 2008) ...............................................................................10

United States v. Laurienti,

   731 F.3d 967 (9th Cir. 2013) ............................................................................... 6

United States v. Martin,

   278 F.3d 988 (9th Cir. 2002) ............................................................................... 9

United States v. Ross,

   310 F. App'x 160 (9th Cir. 2009) ............................................................................... 9


**STATUTES**

18 U.S.C. § 1349.................................................................................................1, 8

18 U.S.C. § 3553.................................................................................................passim

18 U.S.C. § 3572................................................................................................. 9

18 U.S.C. § 3663A................................................................................................. 9

18 U.S.C. § 3664................................................................................................. 9


**OTHER AUTHORITIES**

S. Rep. No. 98–225, at 76 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3259 ........11

ii

**RULES**

U.S.S.G. § 2B1.1 ..............................................................................................4, 5

U.S.S.G. § 3B1.1 ...........................................................................................4, 5, 6

U.S.S.G. § 3B1.3 ...........................................................................................4, 6, 7

U.S.S.G. § 3E1.1..................................................................................................... 4

U.S.S.G. § 5K1.1 ...................................................................................i, 1, 7, 8, 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

The United States hereby files its sentencing position for Defendant Jane Alcain ("Alcain" or "Defendant"). On November 16, 2020, Defendant pleaded guilty to Count One of the Information charging conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349.

The United States calculates the Defendant's applicable offense level to be 30, with a Guidelines range of 97–121 months based on Criminal History Category I. In addition, the government moves for a downward departure under U.S.S.G. § 5K1.1 to reduce Defendant's total offense level by eight (8) levels because Defendant provided substantial assistance in the investigation and prosecution of others. If the Court accepts the government's calculation of the applicable offense level, the government's recommended eight-level reduction for substantial assistance, and the findings in the Presentence Report ("PSR") that the Defendant is in Criminal History Category I, then Defendant's total offense level would be 22, with a Guidelines range of 41–51 months. The government recommends that the Court sentence the Defendant to 41 months of incarceration and to three years of supervised release, to pay a special assessment of $100, and to pay $9,118,043 in restitution to the victim, Medicare. The government's recommended sentence is sufficient to provide just punishment in this case, promote respect for the law, and deter Defendant and others from committing similar crimes in the future.

### II.     PROCEDURAL BACKGROUND

On September 30, 2020, the government charged Alcain by Information with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349. On November 16, 2020, Alcain pleaded guilty to the Information. Alcain's sentencing hearing is set for June 10, 2024.

### III.    OFFENSE CONDUCT

The plea agreement sets out the factual basis for Defendant's guilty plea.

1   In or around February 2016, Defendant opened Heritage Hospice Inc.
2   ("Heritage"), a hospice company located at 3325 Wilshire Boulevard, Suite 1245, Los
3   Angeles, CA 90010. Defendant was the owner and operator of Heritage and submitted
4   the Medicare application for Heritage, certifying Heritage would only submit true and
5   accurate claims for medically necessary services to Medicare. Medicare relied on that
6   certification in processing Heritage's claims. Defendant's responsibilities as owner and
7   Director of Nursing at Heritage included running the day-to-day operations, overseeing
8   employees, directing admissions and discharge decisions for patients, causing the
9   submissions of claims to Medicare for hospice services, and controlling the finances.
10  Defendant knew Medicare would not reimburse health care providers for medically
11  unnecessary services or for services obtained through the payment of illegal kickbacks.

12  Beginning in at least in or around May 2017, Defendant engaged Physician 1 to be
13  the Medical Director of Heritage. By September 2017, Defendant knew that Heritage,
14  under her direction, submitted false and fraudulent claims to Medicare for hospice care
15  provided to beneficiaries who did not qualify for or have legitimate need for hospice care
16  and for claims obtained through the payment of illegal kickbacks. Despite this fact, in
17  and after September 2017, Defendant opened three additional hospice companies and
18  concealed her involvement as the administrator, day-to-day operator, and beneficial
19  owner of these three additional hospice companies by using straw owners and having the
20  straw owners submit the Medicare enrollment applications for the new hospices.
21  Defendant engaged Physician 1 to be the Medical Director at all three of the new
22  hospices and paid illegal kickbacks to Marketer 1 and 2 in exchange for Medicare
23  beneficiary referrals.

24  Physician 1 signed medical records, including certifications of terminal illness,
25  which falsely qualified the beneficiaries as terminally ill and in need of hospice services,
26  regardless of the beneficiaries' actual conditions. Defendant used these fraudulent
27  records and certifications, knowing they were fraudulent, to support false claims to
28

2

Medicare for hospice services that were not medically necessary and/or were based on referrals obtained through the payment of illegal kickbacks.

Beginning in or around September 2017, and continuing in or around November 2019, Veteran's Hospice Care Inc. ("Veterans"), was a hospice company located at 3325 Wilshire Boulevard, Suite 415, Los Angeles, California 90010, within the Central District of California. Defendant concealed her involvement with Veterans—as the administrator, day-to-day operator, and beneficial owner—by having Owner 1 listed as the owner and submitting the Medicare enrollment application for Veterans.

Beginning in or around May 2018, and continuing in or around November 2019, A.N.T. Hospice Inc. ("A.N.T."), was a hospice company located at 3055 Wilshire Boulevard, Suite 805, Los Angeles, California 90010, within the Central District of California. Defendant concealed her involvement with A.N.T—as the administrator, day-to-day operator, and beneficial owner—by having Owner 2 listed as the owner and submitting the Medicare enrollment application for A.N.T.

Beginning in or around August 2018, and continuing in or around August 2019, Hospice and Palliative Care of Saint Mariam Inc. ("HPCSM"), was a hospice company located at 620 West Route 66, Suite 201, Glendora, California 91740, within the Central District of California. Defendant concealed her involvement with HPCSM—as the administrator, day-to-day operator, and beneficial owner—by having Owner 3 listed as the owner and submitting the Medicare enrollment application for HPCSM.

Between in or around September 2017 and continuing through at least November 2019, Defendant submitted or caused to be submitted false and fraudulent claims to Medicare from Heritage, Veterans, A.N.T., and HPCSM for hospices services that were not medically necessary and/or where the referral for those services had been obtained through the payment of illegal kickbacks. Defendant agreed that $10,941,714 was the intended loss to Medicare from the conspiracy, and that Medicare paid approximately $9,118,043 on those false and fraudulent claims.

3

Defendant committed all the above acts knowingly and willfully, and with the intent to defraud. Defendant agreed that she was an organizer, leader, manager, and supervisor at all four of the hospice companies—Heritage, Veterans, A.N.T., and HPCSM—that submitted false and fraudulent claims.

## IV.   GUIDELINES CALCULATION

### A.   Presentence Investigation Report

In the PSR, the United States Probation Office ("USPO") calculated Defendant's total offense level as 30, with a criminal history category I, as follows:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2B1.1 (a)(2) |
| Loss Amount: More than $9.5m and Less than $25m | 20 | U.S.S.G. § 2B1.1 (b)(1)(K) |
| Health Care Offense over $7m | 3 | U.S.S.G. § 2B1.1 (b)(7) |
| Aggravating Role | 2 | U.S.S.G. § 3B1.1 |
| Abuse of Position of Trust | 2 | U.S.S.G. § 3B1.3 |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1 |
| Total Offense Level | 30 | |

Accordingly, the USPO's calculation of Defendant's total offense level was 30, resulting in a Guidelines sentence of 97–121 months based on Criminal History Category I. The USPO recommended that a sentence of 60 months' imprisonment would be sufficient to provide adequate deterrence and promote respect for the law for the Defendant.

### B.   Plea Agreement

In the plea agreement, the parties agreed to the same Sentencing Guideline factors and total offense level as found by the USPO in the PSR, stated above.

### C.   Applicable Guidelines Provisions

#### 1.   Loss Amount

The parties agreed to, and the USPO correctly applied, a 20-level enhancement under U.S.S.G. § 2B1.1 (b)(1)(K) for loss between $9,500,000 and $25,000,000.

1    Pursuant to the Guidelines, the loss amount "is the greater of actual loss or intended

2    loss." U.S.S.G. § 2B1.1 App. Note 3(A).

3         In her plea agreement, Alcain admitted she caused her hospice companies to

4    submit to Medicare approximately $10,941,714 in false and fraudulent claims, for which

5    Medicare paid $9,118,043. Here, the intended loss to Medicare of the amount of

6    fraudulent claims submitted ($10,941,714) is greater than the actual loss to Medicare of

7    the amount of claims paid to Defendant's hospice companies ($9,118,043). Therefore,

8    the intended loss to Medicare from Defendant's conspiracy—$10,941,714—is the

9    appropriate amount for the purpose of determining the loss under U.S.S.G. § 2B1.1,

10   which carries a 20-level enhancement for a loss of more than $9,500,000 and less than

11   $25,000,000 pursuant to U.S.S.G. § 2B1.1 (b)(1)(K).

12                    2.    Federal Health Care Offense

13        The parties agreed to, and the USPO correctly applied, a 3-level enhancement

14   under U.S.S.G. § 2B1.1 (b)(7) because Defendant was convicted of a federal health care

15   offense involving a government health care program where the intended loss is more

16   than $7,000,000. Here, Defendant pleaded guilty to a federal health care offense that

17   caused a loss to the Medicare program—a government health care program—of

18   $10,941,714. Thus a 3-level enhancement should be applied.

19                    3.    Aggravating Role

20        The parties agreed to, and the USPO correctly applied, a 2-level enhancement for

21   Defendant's aggravating role under U.S.S.G. § 3B1.1(c). To qualify for an aggravating

22   role enhancement under U.S.S.G. § 3B1.1(c), the defendant must have been an

23   organizer, leader, manager, or supervisor in any criminal activity. The Guidelines

24   identify certain factors that a court should consider in analyzing a defendant's role,

25   including "the exercise of decision making authority, the nature of participation in the

26   commission of the offense, the recruitment of accomplices, the claimed right to a larger

27   share of the fruits of the crime, the degree of participation in planning or organizing the

28
                                              5

offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *Id.* cmt. n. 4.

Defendant was an organizer, leader, manager, and supervisor of the charged conspiracy to commit health care fraud on the Medicare program. Defendant's responsibilities as owner and Director of Nursing at Heritage Hospice included running the day-to-day operations, overseeing employees, directing admissions and discharge decisions for patients, causing the submissions of claims to Medicare for hospice services, and controlling the finances.

In and after September 2017, Defendant also opened three additional hospice companies and concealed her involvement as the administrator, day-to-day operator, and beneficial owner of these three additional hospice companies by using straw owners and having the straw owners submit the Medicare enrollment applications for the new hospices. Defendant engaged Physician 1 to be the Medical Director at all three of the new hospices and paid illegal kickbacks to Marketer 1 and 2 in exchange for Medicare beneficiary referrals. Moreover, Defendant agreed in her plea agreement that this enhancement applied. Accordingly, Defendant qualifies for the 2-level enhancement for an aggravating role under U.S.S.G. § 3B1.1(c) because she was organizer, leader, manager, or supervisor of employees, straw Owners 1–3, Physician 1, and Marketers 1 and 2 in a conspiracy to commit health care fraud on Medicare.

### 4.    Abuse of Position of Trust

The parties agreed to, and the USPO correctly applied, a 2-level enhancement for the Defendant's abuse of her position of public or private trust under U.S.S.G. § 3B1.3. Under the guidelines, a position of public or private trust is characterized by professional or managerial discretion, or "substantial discretionary judgment that is ordinarily given considerable deference." U.S.S.G. § 3B1.3, cmt. n.1; *United States v. Laurienti*, 731 F.3d 967, 973 (9th Cir. 2013). A defendant in a position of public or private trust is "subject to significantly less supervision than employees whose responsibilities are primarily

6

1    nondiscretionary in nature." U.S.S.G. § 3B1.3, cmt. n.1. For the enhancement to apply,

2    the position must have "contributed in some significant way to facilitating the

3    commission or concealment of the offense (e.g., by making the detection of the offense

4    or the defendant's responsibility for the offense more difficult)." *Id.*

5           Defendant abused her position of trust with Medicare. Owners of health care

6    companies can be in a position of trust. In *United States v. Adebimpe*, 819 F.3d 1212,

7    1220 (9th Cir. 2016), the Ninth Circuit held that owners of medical supply companies

8    occupied a position of trust with respect to Medicare because they had independent

9    obligations to determine that the medical equipment was appropriate, and they—not the

10   doctor—submitted claims to Medicare that they had personally certified to be valid. The

11   same is true here. Defendant abused her position of trust as an owner of the hospice

12   companies because she had an independent obligation to ensure that hospice care was

13   appropriate. She caused her companies to submit false claims to Medicare because she

14   personally certified that she would comply with all Medicare rules, including not paying

15   kickbacks for patient referrals, and that she would not submit false or fraudulent claims

16   for medically unnecessary services to Medicare. Defendant was responsible for

17   submitting true and accurate claims to Medicare. Accordingly, Defendant violated her

18   position of trust with the Medicare program.

19                    5.    Total Offense Level

20          Therefore, with Defendant's acceptance of responsibility, the United States

21   recommends that a total offense level of 30, which carries a guidelines range of 97–121

22   months, is appropriate as the advisory Guidelines offense level.

23   **V.    MOTION FOR DOWNWARD DEPARTURE UNDER SECTION 5K1.1**

24          The government moves for a downward departure pursuant to U.S.S.G. § 5K1.1 to

25   reduce Defendant's total offense level by eight (8) levels based on the substantial

26   assistance that Defendant provided to the government. The Court may consider several

27   factors when determining whether a departure under § 5K1.1 is appropriate: (1) the

28
                                                7

1  significance and usefulness of the defendant's assistance; (2) the truthfulness,

2  completeness, and reliability of the information provided by the defendant; (3) the nature

3  and extent of the defendant's assistance; (4) the danger or risk of injury to the defendant

4  or defendant's family resulting from defendant's assistance; and (5) the timeliness of

5  defendant's assistance. *See* U.S.S.G. § 5K1.1 (a).

6         The § 5K1.1 factors support an eight-level downward departure in this case.

7  Defendant provided significant and useful assistance to the government's investigation

8  and prosecution of a co-conspirator, Physician 1. Alcain conducted three surreptitious

9  video and audio recorded meetings with Physician 1. During those meetings, Physician 1

10 agreed with Alcain that Alcain paid marketers kickbacks to recruit beneficiaries to the

11 hospices and Physician 1 admitted that he certified beneficiaries who were "borderline"

12 or "50/50" inappropriate for hospice care. On March 8, 2024, based on Alcain's

13 substantial assistance, Physician 1 was charged by information with one count of

14 conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 under seal.

15        Defendant's assistance was also truthful, complete, reliable, and timely. Defendant

16 proffered four times from 2020 to 2023. During her proffers, Alcain confirmed that her

17 and Physician 1 used the terms "borderline" and "50/50" to refer to beneficiaries who

18 were not terminally ill and were inappropriate for hospice care yet admitted them to her

19 hospice companies anyway. Alcain also confirmed that Physician 1 never asked her for

20 medical records for any of the beneficiaries he went to visit to admit to her hospices, nor

21 did she have any because she did not request them from the beneficiaries' primary

22 physicians. Alcain stated that she did not request medical records or histories from

23 beneficiaries' primary physicians because if she did, the beneficiaries' primary

24 physicians would object to admitting them to hospice because they were not terminally

25 ill.

26        Therefore, the government moves for a downward departure pursuant to U.S.S.G.

27 § 5K1.1 to reduce Defendant's total offense level by eight levels, from 30 to 22. If

28

granted, the corresponding Guidelines range would be 41–51 months. The government

recommends a sentence of 41 months' incarceration for Defendant.

## VI.   RESTITUTION

As agreed to in the plea agreement, the Court should order Defendant to pay

restitution to Medicare in the amount of $9,118,043.97. This is the amount that Medicare

paid because of the false and fraudulent claims that Defendant and her co-conspirators

submitted and caused to be submitted to Medicare during the conspiracy period.

Restitution is mandatory under the Mandatory Victims Restitution Act because the

Defendant's crime involved fraud and deceit. *See* 18 U.S.C. § 3663A (c)(1)(A)(ii).

Defendant agreed to this amount in her plea agreement and this is the amount

recommended in the PSR.

Title 18, United States Code, Section 3663A mandates restitution for offenses

against property under Title 18, including any offense committed by fraud or deceit, and

for any offense in which an identifiable victim has suffered pecuniary loss. Under

Section 3663A, the Court must order full restitution without regard to defendant's

economic situation. 18 U.S.C. § 3664 (f)(1)(A). The Court shall order full and immediate

payment of restitution, unless, in the interest of justice, the Court provides for payment

on a date certain or in installments. 18 U.S.C. § 3572 (d)(1). "Immediate payment [of

restitution] is the general rule[.]" *United States v. Martin*, 278 F.3d 988, 1006 (9th Cir.

2002) (finding district court did not err in following general rule because it had

information regarding defendant's financial resources that it had "presumably considered

and found insufficient to warrant periodic payments"); *see also United States v. Ross*,

310 F. App'x 160, 162 (9th Cir. 2009) (unpublished) (defendant did not meet burden of

proving that he was unable to make "immediate repayment" of restitution).

## VII.   ANALYSIS OF RELEVANT 18 U.S.C. § 3553(a) SENTENCING FACTORS

The federal statute governing sentencing requires district courts to take the

applicable Sentencing Guidelines range into consideration when sentencing, along with

other sentencing factors enumerated by Congress. *See* 18 U.S.C. § 3553; *United States v. Booker*, 543 U.S. 220, 264 (2005) ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."). When the Court determines a sentence, "the Guidelines are the starting point and the initial benchmark." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (quotations omitted). Once the Court calculates the defendant's Sentencing Guidelines range, it must then consider the factors set forth in 18 U.S.C. § 3553(a) to decide if they support the sentence recommended by Probation and the parties. *Id.* These factors include, among others, (1) the nature and circumstances of defendant's offense and her history and characteristics; (2) the need for the sentence imposed to, among other things, (i) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (ii) afford adequate deterrence to criminal conduct; and (iii) protect the public from further crimes of defendant; and (iv) provide the defendant with needed training, medical care, or treatment. 18 U.S.C. § 3553 (a)(1), (2).

The Section 3553 (a) factors support a sentence of 41 months' incarceration for Defendant. Such a sentence would be "sufficient, but not greater than necessary," 18 U.S.C. § 3553 (a), to comply with the purposes enumerated in § 3553 (a)(2), discussed further below.

A. **The Nature and Circumstances of Defendant's Offense and Her History and Characteristics Under 18 U.S.C. § 3553 (a)(1)**

The nature and circumstances of Defendant's offense were serious and warrant a sentence of incarceration. Defendant's crimes took advantage of the Medicare program, a taxpayer-funded program that is designed to provide critical health services to some of the most vulnerable members of society—the elderly and disabled. These types of schemes threaten the viability of the Medicare program, which can hardly afford such

10

theft, and jeopardize its ability to provide much needed health care benefits to the elderly and disabled.

Defendant has a criminal conviction that occurred over 31 years ago and does not affect the recommended sentence. Defendant was convicted in 1992 of misdemeanor theft. Defendant was sentenced to 12 months' probation 80 hours of community service. Defendant's criminal history results in a score of 0, which is a Criminal History Category I under the Sentencing Guidelines. Accordingly, the serious nature and circumstances of Defendant's offense support a 41-month sentence.

**B.      The 18 U.S.C. § 3553 (a)(2) Factors Support a 21-Month Sentence**

A 41-month sentence, after a downward departure under U.S.S.G. § 5K1.1, reflects the seriousness of Defendant's offense, promotes respect for the law, and provides just punishment for her offense that caused an actual loss to Medicare of at least $9,118,043 under 18 U.S.C. § 3553 (a)(2)(A). *United States v. Adebimpe*, 649 F. App'x 449, 454 (9th Cir. 2016) (unpublished) (defendant's 51-month sentence not unreasonable where she was responsible for $1.5 million damages to Medicare).

A 41-month sentence is also appropriate to afford adequate deterrence to criminal conduct generally, and to deter Defendant herself from engaging in similar illegal conduct, under 18 U.S.C. § 3553 (a)(2)(B), (C). As stated by the drafters of 18 U.S.C. § 3553(a), general deterrence is particularly important for white collar criminals to dissuade actors that small fines or low sentences can be dismissed as simply a "cost of doing business." S. Rep. No. 98–225, at 76 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3259. A sentence of incarceration is necessary to affect that calculus so that others realize that the "risk" is too high—that they will pay a significant cost if they are caught. Individuals who are engaged in Medicare fraud schemes make a calculated decision that the risk of being caught and punished is worth the illicit proceeds that they can obtain from the Medicare program. A sentence of incarceration for the Defendant should deter her and others from defrauding Medicare.

## VIII.  CONCLUSION

For the foregoing reasons, the government respectfully submits that a sentence of 41 months' incarceration, three years' supervised release, and a $100 special assessment, as well as an order of $9,118,043 restitution, is sufficient, but not greater than necessary, to provide just punishment to Defendant for her crimes, promote respect for the law, and deter Defendant and others from committing similar crimes in the future. *See* 18 U.S.C. § 3553(a).